```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**JARRELL W. MULLINS**

       Plaintiff

v.                        Civil Action No. 2:10-0792

**CHARLESTON STAMPING &**
**MANUFACTURING, INC.**

       Defendant

## MEMORANDUM OPINION AND ORDER

Pending are motions by Charleston Stamping & Manufacturing, Inc., ("CSM") for summary judgment filed March 21, 2011, and to strike plaintiff Jarrell W. Mullins' untimely memorandum in opposition to CSM's summary judgment motion, filed April 13, 2011.

Mullins has not responded to the motion to strike. The applicable time period has elapsed. Nevertheless, the court concludes the better course is to receive the untimely memorandum in opposition in order to assure a complete evidentiary record upon which to resolve CSM's summary judgment motion. The court, accordingly, ORDERS that the motion to strike be, and it hereby is, denied.

I.

In December 2006, CSM was formed.  It acquired the assets of a former manufacturing facility ("Plant") located in South Charleston, West Virginia.  In May 2007, it advertised for hourly positions.  In June 2007, it commenced accepting applications.  On January 14, 2008, CSM began hiring.

For hourly employees the hiring process had multiple stages.  First, applicants submitted their materials to Workforce West Virginia ("WWV").  If an applicant's materials were complete, WWV conducted some basic testing in math, reading, and other disciplines.  If the applicant achieved success on that testing, he was informed that further evaluations would be scheduled.

Next, Peoplework Solutions ("Peoplework") conducted the follow-on evaluative process for CSM.  Peoplework was established in 1991.  It performs pre-employment assessments for clients such as Toyota.  Peoplework's testing focused on the traits necessary for the production-oriented Manufacturing Specialist positions that CSM wished to fill.  The tests were developed over an extended period of time by Peoplework, in consultation with CSM management employees familiar with the associated job

2

requirements.  CSM asserts that the tests were designed to be entirely age neutral.  It is undisputed that both Peoplework and CSM lacked information about the applicants' ages.

The Peoplework testing consisted of a full day of activities.  It involved problem solving and group related events, along with a simulated "Work Day" of job-related tasks.  The activities took place in a fictional company setting where candidates assumed team member roles.  Peoplework scored the participants without input or involvement by CSM.

The final step in the process occurred when Peoplework forwarded to CSM each application, the WWV scores, and the Peoplework scores.  CSM set a minimum score benchmark for the Peoplework scores of 2.63 or higher.  If an applicant did not achieve that minimum mark, he was culled from the pool and received no further consideration.

In June 2007, Mullins submitted to WWV an application for CSM employment and completed its testing.  In January or February 2008, Mullins participated in the Peoplework testing.  By his own admission he had no difficulty performing the tasks and did so to the best of his ability.  He also raised no concern about either the nature of the tests or the manner in which they

were administered.  Unfortunately, however, Mullins achieved a score of only 2.09.  He was thus automatically disqualified from further hiring consideration.  On February 11, 2008, at a time when Mullins was 56 years of age, he was informed by CSM that he would no longer be considered for employment.

The same objective criteria was applied to all hourly applicants.  A total of 244 individuals completed the Peoplework testing.  Of those, (1) 205 achieved the minimum 2.63 score and continued to further screening, and (2) 39 candidates, including Mullins, failed to achieve the minimum score.  A majority of employees hired by CSM were over 40 years of age.  Fully 12 of 21, or 57%, were age 40 or older, with 7 employees in their 40s, 4 in their 50s, and one who was age 60.

On June 30, 2008, Mullins, acting *pro se*, filed a charge alleging age discrimination with the West Virginia Human Rights Commission ("WVHRC").  On January 14, 2009, the WVHRC issued a Determination stating pertinently as follows:

> A full investigation was conducted by officers of the [WVHRC] . . . to determine issues of fact and law pertaining to the above-captioned charge.  All relevant testimonies, documentation and other forms of evidence jurisdictional to the Commission and having value for deciding the issues, have been considered. Accordingly, a determination of NO PROBABLE CAUSE is made based primarily on the following reason[]: . . . The [WVHRC] . . . investigation did not substantiate

>the Complainant's allegations that Respondent failed to
>hire him because of his Age.

(Ex. L, Def.'s Mot. Summ. J.  at 2).

The Determination provided Mullins additional information about his options going forward:

>The West Virginia Human Rights Act . . . provides that
>you may request an Administrative Review of the No
>Probable Cause determination.  Such request shall be
>made within ten (10) days of receipt of this letter.

(Id. at 3).  On February 6, 2009, after Mullins took no further action, the WVHRC dismissed and closed the case.

Mullins' charge of discrimination was "dual filed" with the Equal Employment Opportunity Commission ("EEOC").[1]  In or about April 2009, Mullins received a call from the EEOC about the

---

[1] Garcia v. Village of Mount Prospect, 360 F.3d 630, 642–43 n.13 (7th Cir. 2004) (noting that in a dual-filing system the filing of a charge with the state agency is also considered as a filing in the EEOC).  Mullins asserts that he filed his WVHRC charge after he filed his EEOC charge.  That contention appears inaccurate based upon Exhibit Q to CSM's reply brief.  That Exhibit, entitled "NOTICE OF CHARGE OF DISCRIMINATION," contains separate EEOC and WVHRC charge numbers and states materially as follows:

>You are hereby notified that the above-referenced
>charge of employment discrimination has been received
>by the [WVHRC] . . . and sent to the EEOC for dual-
>filing purposes.

(Id. at 1).  CSM asserts that it, and Mullins, were "advised" of the "NOTICE OF CHARGE OF DISCRIMINATION."  (CSM Reply at 2).  Mullins does not challenge that assertion.

dual-filed charge.  Mullins testified the contact "surprised" him.  The reason for his surprise was explained by him during his deposition:

> They asked if I was Jarrell Mullins and I said yes. They identified their self as the Federal [EEOC] . . . and they was following my case, and I said, well, the state of West Virginia says there was no probable cause and I thought it was over with.

(Ex. J, Dep. of Jarrell W. Mullins at 52).

On December 18, 2009, the EEOC determined that there was reasonable cause to believe age discrimination had occurred. The EEOC suggested that the Peoplework tests "are not properly validated and adversely impact applicants within the protected age group, particularly those applicants who are age 55 and older."  (Ex. N, Def.'s Mot. Summ. J. at 1).  The EEOC, however, declined to litigate on Mullins' behalf.  On March 4, 2010, it instead issued a Notice of Right to Sue ("notice") advising Mullins that he could "file a lawsuit against the respondent[s] under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> from your receipt of this Notice . . . (The time limit for filing suit based on a state claim may be different.)"  (Ex. O, Def.'s Mot. Summ. J. (emphasis in original)).

6

On May 3, 2010, Mullins instituted this action in the Circuit Court of Kanawha County. He alleges a single count of age discrimination by CSM in violation of the West Virginia Human Rights Act, West Virginia Code section 5-11-1 to -21 ("WVHRA").[2] On June 4, 2010, CSM removed. CSM now seeks judgment as a matter of law, asserting alternatively that (1) Mullins' claim is barred by the applicable statute of limitations, and (2) he cannot make out a <u>prima</u> <u>facie</u> case of age discrimination.

II.

A. Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

---

[2]The complaint originally contained two counts, one against CSM and another against John Wise, the CSM employee who informed Mullins of the unfavorable outcome of his application. The claim against Wise was dismissed by stipulation on January 3, 2011.

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.  Analysis

In syllabus point 1 of McCourt v. Oneida Coal Co., Inc., 188 W. Va. 647, 648, 425 S.E.2d 602, 603 (1992), the Supreme Court of Appeals of West Virginia stated as follows:

> In circuit court cases alleging a discriminatory discharge from employment, which a complainant might bring in the West Virginia Human Rights Commission under the West Virginia Human Rights Act, W.Va. Code, 5-11-1 et seq., the statute of limitations period for filing a complaint with the circuit court ordinarily begins to run on the date when the employer unequivocally notifies the employee of the termination decision.

Id.  On February 11, 2008, Mullins was unequivocally notified that he would no longer be considered for employment by CSM.  He

9

was thus obliged to institute an action under the WVHRA in the circuit court no later than February 11, 2010.  He waited until May 3, 2010.  His claim is thus barred by the applicable limitations period.

Jarrell appears to concede as much.  He asserts, however, that he should be given the benefit of equitable tolling.[3]  He focuses on the 90-day period to institute an action mentioned by the EEOC in its March 4, 2010, notice.  The contention fails for a variety of reasons.  First, the EEOC notice explicitly speaks only to "a lawsuit . . . under federal law."  (Ex. O, Def.'s Mot. Summ. J. at 1).  The notice thus does not control the filing period for an action filed in state court under state law.  The notice says as much.

---

[3]The supreme court of appeals has previously observed as follows:

> [T]he time period for filing a complaint with the Human Rights Commission alleging a violation of the Human Rights Act is not jurisdictional in nature and is subject to waiver and equitable doctrines of tolling and estoppel.

Syl. Pt. 1, Independent Fire Co. No. 1 v. West Virginia Human Rights Comm'n, 180 W. Va. 406, 376 S.E.2d 612 (1988).  The court is willing to assume for purposes of the present case that equitable tolling might also apply to the two-year period applicable for instituting an action in the circuit court under the WVHRA.

Second, it does not appear that the circumstances would warrant equitable tolling in any event.  Mullins believes equity demands relief from the time bar based upon his mistaken notion that the EEOC and WVHRC charges were not dual filed.  As noted <u>supra</u>, however, the assertion appears inaccurate.

Third, Mullins appears to assert that he was not aware that his circumstances would support a charge of discrimination until the EEOC issued its notice.  That is not the case.  The EEOC is not the arbiter of whether a particular scenario justifies the filing of a civil action by an individual under the WVHRA.  That privilege is Mullins' alone.

Mullins having failed to act seasonably, CSM is entitled to judgment as a matter of law on statute of limitations grounds.  In view of this disposition, the court need not reach CSM's second contention supporting its dispositive motion.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 20, 2011

John T. Copenhaver, Jr.
United States District Judge